**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

PAUL HARRIS                                          *
ADC #154185,                                         *
                                                     *
                         Plaintiff,                  *
v.                                                   *          No. 2:26-cv-00022-JJV
                                                     *
DAVIS,                                               *
East Arkansas Regional Unit, *et al.*,               *
                                                     *
                         Defendants.                 *

**<u>MEMORANDUM AND ORDER</u>**

## I.      INTRODUCTION

Plaintiff Paul Harris is a prisoner in the Arkansas Department of Correction (ADC) who

has filed this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging Defendants Leavy Watson

and Wayne Newsom used excessive force against him at the East Arkansas Regional Unit. (Doc.

2.) Specifically, Plaintiff says during shower call on January 7, 2026, Defendants stripped him

naked, put him in a paper suicide gown, "assaulted" him in an unspecified way, shoved his head

into the bars, pulled his hands forcibly, and ripped off his paper gown. (*Id.*) All other claims and

Defendants have been previously dismissed without prejudice. (Doc. 15.) And the parties have

consented to proceed before me. (Doc. 18.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to

dismissal because Plaintiff failed to exhaust his available administrative remedies. (Docs. 24-

26.) Plaintiff has filed a Response, and this matter is ripe for a decision. (Docs. 32-34). After

careful consideration and for the following reasons, the Motion is granted.

## II.     SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to

the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.    DISCUSSION

### A.    Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies

2

as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.* The only exception is if administrative remedies are unavailable. 42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

### B.    ADC's Grievance Procedure

Administrative Directive 19-34 (AD 19-34) establishes a three-step procedure for exhausting administrative remedies in any ADC Unit. (Doc. 24-3.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. (*Id.* at § IV(E)(1)). Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days. (*Id.* § IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the Warden's or Health Service Administrator's response to the grievance, or who does not timely receive a response, must appeal within five working days to the "Chief Deputy/Deputy/Assistant Director." (*Id*. § IV(F)(9).) And that response ends the grievance process. (*Id*.)

3

**C.      Plaintiff's Grievances**

The parties agree Plaintiff did not file any grievances about the January 7, 2026 incident before he filed this lawsuit on February 9, 2026.  (Doc. 24-1; Doc. 32 at 1.)  Plaintiff says he was not required to do so because a prisoner can choose to report sexual abuse/harassment through the grievance process or by orally reporting a Prison Rape Elimination Act (PREA) violation to any officer.  (Doc. 32 at 1-2.)  Giving Plaintiff the benefit of the doubt, it is arguable his allegations against Defendants in this lawsuit include a component of sexual abuse/harassment.

In support of his assertion that he was not required to exhaust under AD 19-34, Plaintiff has included in his Response a handwritten quotation from an unspecified document (possibly a prison handbook or pamphlet) about the PREA.  (Doc. 32-at 3-4.)  The quotation says prisoners have "multiple methods to report sexual assault/abuse" including using the PREA hotline, telling an officer, "or" utilizing "the grievance procedure."  (*Id*.at 4.)  Even if I presume the quotation is correct, the cited language tells prisoners how to report a PREA violation to start an internal investigation.[1]  It does not say what a prisoner must do before bringing a lawsuit in court for an alleged constitutional violation.  And the PREA allows prisons to choose whether to require or exempt sexual assault/harassment allegations from their grievance procedure.  *See* 28 C.F.R § 115.52; *Johnson v. Robinette*, 105 F.4th 99, 108 (4th Cir. 2024).  The ADC has chosen to include PREA matters in its grievance procedure.

Specifically, AD 19-34 § III(G) says a "PREA Grievance" is a grievance where an

---

[1] The PREA gives grant money and creates a commission to study the ways to reduce rape in prison. *See* 34 U.S.C. §§ 30301-30309; *Blevins v. Pearson*, Case No. 18-cv-2270, 2018 WL 6814183, at *3 (D. Minn. Nov. 30, 2018), *rec. adopted*, 2018 WL 6807391 (D. Minn. Dec. 27, 2018).  It does not create a private right of action. *Id.*  Thus, to proceed with a claim for damages for any alleged sexual misconduct, a prisoner must file a lawsuit for a constitutional violation, battery.

"inmate is alleging staff-on-inmate or inmate-on-inmate sexual abuse or sexual harassment as those terms are defined in the PREA Administrative Directive." (Doc. 24-3 at 2.) At step one, a PREA informal resolution does not have to be filed with in the fifteen day limit. *See* § IV(E)(1) (Doc. 24-3 at 6.) It cannot be reviewed by the officer named therein, may include attached pages, and may be given to any staff member to act as the problem solver. *See* § IV(E)(3) and (H)(6) (*Id.* at 7, 14.) If the informal resolution involves a suspected PREA matter, the problem solver must "immediately notify" the "highest ranking supervisor at the unit" or "duty warden" without "completion of Step One, the informal process." *See* § III(G) and IV(E)(4)(e) (*Id.* at 2, 7.) If the duty warden concludes it does <u>not</u> raise a PREA matter, the informal resolution is returned to the problem solver and processed as usual. *See* § III(G) (*Id.* at 2.) However, if the duty warden concludes it <u>does</u> involve a PREA matter, it is referred to the Internal Affairs Division (IAD) for investigation. *See* § IV(F)(8) and (I) (*Id.* at 11, 15.) After receiving the result of the investigation, the Warden sends a grievance response to the prisoner, who may then appeal through the normal process if he is dissatisfied. *See* § IV(F)(8) and (G)(1) (*Id.* at 11-12.) Importantly, a PREA matter is <u>not</u> included in the list of "Non-Grievable Issues." *See* § III(H) (*Id.* at 3.) And AD 19-34 concludes with the following admonition:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

*See* § IV(N) (*Id.* at 19.) Thus, it is clear Plaintiff was required to file a grievance raising any sexual abuse/harassment claims, and that AD 19-34 provided an available remedy for him to do so.

Next, Plaintiff makes the vague allegation that administrative remedies were unavailable

to exhaust any of his claims (excessive force and sexual abuse/harassment) because "at the time the officer would not give me any paper work and they would not send out my mail." (Doc. 32 at 1.) But Plaintiff does not explain who refused to give him his "paper work," whether it was a grievance form, or when this occurred. Additionally, AD 19-34 § IV(C)(1) and (2) say copies of the grievance policy, which includes the necessary forms, are available in the Unit's law library, and grievance forms are "readily available to any inmate in any housing area at any time." (Doc. 24-3 at 5.) Plaintiff filed two grievances saying Defendant Watson did not give him all or part of his incoming legal mail about a civil lawsuit. (Doc. 32 at 7-10). But this case does not involve an access to the courts claim. And the possibility that Plaintiff did not receive some of his legal mail about a civil lawsuit does not mean he was denied access to grievance forms. Finally, I note Plaintiff's grievance history record says he filed three grievances, about other matters, on February 26, March 10, and March 12, 2026. (Doc. 24-2 at 1.) This demonstrates that as of February 26, 2026, Plaintiff had access to grievance forms. Because the fifteen-day limit does not apply to PREA grievances, Plaintiff could have filed a grievance on February 26, 2026, or thereafter, raising his allegations about the January 7, 2026 incident. But it is undisputed he did not do so.

For these reasons, I conclude Plaintiff failed to properly exhaust his available administrative remedies against Defendants. Accordingly, they are entitled to summary judgment and dismissal of this lawsuit. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

That being said, I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the Eighth Circuit has

explained the critical role the exhaustion process plays as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.   Defendants' Motion for Summary Judgment (Doc. 24) is GRANTED, Plaintiff's claims against Defendants Watson and Newsom are DISMISSED without prejudice, and this case is CLOSED.

2.   I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order and the accompanying Judgment would not be taken in good faith.

DATED this 24th day of July 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE